## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH MCDONALD,** | : | **CIVIL ACTION NO. 1:13-CV-2555** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SEIU HEALTHCARE** | : | |
| **PENNSYLVANIA, NEAL BISNO,** | : | |
| **KIM PATTERSON, SHARMIKA** | : | |
| **FARGEN, and MICHELE ALI,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Deborah McDonald filed the above-captioned action, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. ANN. § 951 *et seq.*, and breach of contract. McDonald seeks injunctive relief, compensatory and punitive damages, and costs and fees. Presently before the court is a motion (Doc. 20) to dismiss filed by defendants SEIU Healthcare Pennsylvania, Neal Bisno, Kim Patterson, Sharmika Fargen, and Michele Ali pursuant to Rules 12(b)(4), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the court will grant the motion in part and deny the motion in part, extend the time to effect service, and grant plaintiff leave to file an amended complaint.

I.   **Factual Background and Procedural History**[1]

From 2004 to 2011, Deborah McDonald ("McDonald") was an employee of SEIU Healthcare Pennsylvania ("SEIU HCPA").  (Doc. 1 ¶ 29).  SEIU HCPA is a local branch of the Service Employees International Union ("SEIU") and consists of more than 20,000 healthcare workers.  (Id. ¶ 9).  During the time period at issue, McDonald worked as a bookkeeper for SEIU HCPA and was a member of SEIU HCPA's office staff.  (Id. ¶¶ 29, 141).  McDonald's supervisors at SEIU HCPA included President Neal Bisno ("Bisno"), Secretary/Treasurer Kim Patterson ("Patterson"), Office Director Sharmika Fargen ("Fargen"), and Finance Director Michele Ali ("Ali") (collectively, the "individual defendants").  (Id. ¶¶ 14-17).

In 2010, McDonald began to have panic attacks and experienced such an attack at a demonstration that she attended on behalf of the union.  (Id. ¶¶ 39-40, 62-63).  After Patterson became the Secretary/Treasurer of SEIU HCPA, she informed the office staff, including McDonald, that attendance at union demonstrations and news conferences would be mandatory moving forward.  (Id. ¶ 65).  McDonald requested that Fargen excuse her from participating in additional demonstrations.  (Id. ¶ 66).  Fargen denied this request.  (Id. ¶ 67).  McDonald claims that she was forced to attend additional events and became physically ill while doing so.  (Id. ¶¶ 68-69).

---

[1] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, the court will "accept all well-pleaded facts in the complaint as true, and view them in the light most favorable" to McDonald.  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

McDonald began a medical leave of absence on February 9, 2011.  (Id. ¶ 71).

On March 10, 2011, Bisno approved McDonald's initial medical leave.  (Id. ¶ 79).

Shortly after her leave commenced, McDonald's personal items were purportedly

placed in a cupboard in her office, her mailbox was removed, her voice mail

message was replaced, and she no longer received union mail.  (Id. ¶¶ 127-132).  An

unnamed individual also allegedly informed McDonald that ADP had been

handling her accounting responsibilities as of June 30, 2011 and that Ali had

indicated that McDonald would not be returning to SEIU HCPA after her leave.

(Id. ¶¶ 133-135).

McDonald requested and received extensions of her medical leave from April

8, 2011 to May 8, 2011, (id. ¶¶ 82-88); from May 9, 2011 to May 31, 2011, (id. ¶ 89); and

from June 1, 2011 to August 31, 2011, (id. ¶¶ 91-94).  In an email to Bisno on May 27,

2011, McDonald noted that her medical situation "has spiraled into more and is

requiring a lot more than [she] was prepared for" and that she could not provide an

end date for her leave.  (Id. ¶ 92).  On June 14, 2011, Bisno informed McDonald via

letter that SEIU HCPA had designated McDonald's absence as an FMLA leave and

that her FMLA leave "has been exhausted in accordance with applicable law."  (Id.

¶¶ 93-94).

On August 2, 2011, McDonald's psychiatrist submitted a disability claim to

SEIU HCPA in which he certified that he first treated McDonald on April 21, 2011;

diagnosed McDonald with major depression, panic disorder, persistent anxiety,

interpersonal difficulties, and an inability to work effectively; and stated that he

could not determine when McDonald would be able to return to work.  (Id. ¶¶ 104-110).  On August 11, 2011, McDonald requested that Bisno extend her medical leave beyond August 31, 2011.  (Id. ¶ 112).  Bisno denied this request.  (Id. ¶¶ 113-116).  After McDonald failed to return to work on September 1, 2011, SEIU HCPA terminated her employment on the grounds of abandonment.  (Id. ¶ 117).  McDonald's physician cleared her to return to work on October 31, 2011 on a part-time basis.  (Id. ¶ 122).

The union's policy on medical leaves of absence provides that a union employee shall be entitled to a leave of absence for the lesser of "up to twelve (12) months or the length of employment."  (Id. ¶ 142).  SEIU HCPA also implemented anti-discrimination and anti-harassment policies.  (Id. ¶ 147).  These policies prohibit discrimination or harassment on the bases of "race, color, religion, creed, sex, age, national origin, sexual orientation, physical or mental disability, any other basis prohibited by law, or protected activity under the anti-discrimination statutes."  (Id. ¶ 149).

On June 27, 2012, McDonald dual-filed a charge of discrimination against SEIU HCPA and the individual defendants with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") pursuant to 42 U.S.C. § 2000e–5(b) and (e).[2]  (Doc. 1 ¶ 25).

---

[2] 42 U.S.C. § 2000e–5(e)(1) permits a plaintiff to file a timely charge of discrimination within 300 days of the alleged unlawful employment practice when she files her claim simultaneously with certain state or local agencies.

On July 10, 2013, the EEOC issued McDonald a Notice of Right To Sue, which she received on July 15, 2013.  (Id. ¶ 27).  On October 14, 2013, McDonald commenced the instant action by filing a complaint against SEIU, SEIU HCPA, Bisno, Patterson, Fargen, and Ali with the court.  McDonald alleges that SEIU and SEIU HCPA discriminated against her on the basis of her disability in violation of the ADA, (id. ¶¶ 159-174), and on the basis of her age in violation of the ADEA, (id. ¶¶ 175-181); that SEIU and SEIU HCPA created a hostile work environment, (see id. ¶ 176); that all defendants retaliated against her for taking a medical leave in violation of the FMLA, (id. ¶¶ 182-184), and discriminated against her in violation of the PHRA, (id. ¶¶ 185-200); and that certain defendants breached SEIU and SEIU HCPA's policies pertaining to medical leave, anti-discrimination and anti-harassment, and union membership, (id. ¶¶ 201-204).[3]

On February 20, 2014, the court ordered McDonald to show cause why this case should not be dismissed for failure to serve the summons and complaint within 120 days after filing the complaint pursuant to Federal Rule of Civil Procedure 4(m).  (Doc. 4).  McDonald's counsel submitted a response to the show cause order in which counsel avers that due to a series of serious health issues throughout the 120-day period that required medical treatment, counsel was unable to effect timely

---

[3] McDonald appears to bring a claim against all defendants for breach of the medical leave and anti-discrimination and anti-harassment policies, but against only Patterson for breach of the union membership policy.  (Doc. 1 ¶¶ 201-204).  The union membership policy provides that members of the office staff—including McDonald—were not required to belong to the union.  (Id. ¶ 47).

service on the parties.  (Doc. 5).  Counsel further observes that she mailed waivers of service to all defendants on February 12, 2014—one day after the 120-day period for service expired—and that she notified the court of her health issues on February 14, 2014.  (See id. ¶¶ 28-30).  According to counsel, SEIU HCPA, Bisno, Patteron, Fargen, and Ali were each served at their place of business on February 25, 2014. (Id. ¶ 34).

On March 18, 2014, defendants SEIU HCPA, Bisno, Patteron, Fargen, and Ali filed the instant motion to dismiss the complaint for insufficient process, insufficient service of process, and failure to state a claim upon which relief may be granted.  (Doc. 20).[4]  Defendants also contend that McDonald's hostile work environment, FMLA, and PHRA claims are time-barred.  The motion has been fully briefed and is ripe for disposition.

## II.   **Legal Standard**

The court has jurisdiction over the instant matter because the complaint presents a question of federal law.  See 28 U.S.C. § 1331.  The court also exercises supplemental jurisdiction over the state law claims for violation of the PHRA and breach of contract because they are related to and share a common nucleus of operative facts with the federal law claims, thus forming part of the same case or

---

[4] On May 12, 2014, former defendant SEIU also moved to dismiss the complaint.  (Doc. 39).  On July 22, 2014, SEIU filed a stipulation in which McDonald voluntarily dismissed with prejudice her claims against SEIU.  (Doc. 50).  The court therefore need not address SEIU's motion to dismiss.

controversy.  See id. § 1367; Lyon v. Whisman, 45 F.3d 758, 759-60 (3d Cir. 1995)

(quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

### A.  Rules 12(b)(4) and 12(b)(5): Insufficient Process and Service of Process

Federal Rule of Civil Procedure 4 prescribes the process for issuing and

serving a summons and complaint.  FED. R. CIV. P. 4; 2 JAMES WM. MOORE ET AL.,

MOORE'S FEDERAL PRACTICE § 12.33[1] (3d ed. 2014) [hereinafter MOORE'S FEDERAL

PRACTICE].  A motion to dismiss pursuant to Rule 12(b)(4) properly challenges only

noncompliance with Rule 4(b) or other provisions pertaining to the content or

issuance of the summons, while a Rule 12(b)(5) motion may be used to challenge the

method of service or the lack of service.  FED. R. CIV. P. 12(b)(4), (b)(5); 5B CHARLES

ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed.

2014).  A defendant may move to dismiss the complaint or quash service pursuant to

Rule 12(b)(4) or Rule 12(b)(5) when a plaintiff fails to comply with the requirements

of Rule 4.  2 MOORE'S FEDERAL PRACTICE § 12.33[1].  In a challenge to the sufficiency

of service, the burden of proof lies on the party asserting the validity of service.

Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993)

(citing 4A WRIGHT & MILLER § 1083); Mitchell v. Theriault, 516 F. Supp. 2d 450, 452

(M.D. Pa. 2007).  However, the movant must state its objections with specificity and

must identify the manner in which the plaintiff failed to satisfy the requirements of

service.  2 MOORE'S FEDERAL PRACTICE § 12.33[1].

### B.    Rule 12(b)(6): Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); accord Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); accord Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a

plaintiff must plead to state a claim.'" Id. (alteration in original) (quoting Ashcroft

v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim

should be separated; well-pleaded facts must be accepted as true, while mere legal

conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d

203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual

allegations, it must determine whether they are sufficient to show a "plausible claim

for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); accord

Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a

right to relief above the speculative level").  A claim "has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at

678.  When the complaint fails to present a *prima facie* case of liability, courts

should generally grant leave to amend before dismissing a complaint.  See Grayson

v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

113, 116-17 (3d Cir. 2000).

### C.    Statute of Limitations Defense

Federal Rule of Civil Procedure 8(c) deems a statute of limitations bar to be

an affirmative defense that must be pleaded in an answer to the complaint.  See

FED. R. CIV. P. 8(c).  Nevertheless, the court may dismiss a complaint as time-barred

if "the time alleged in the statement of a claim shows that the cause of action has

not been brought within the statute of limitations."  Robinson v. Johnson, 313 F.3d

128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d

1092, 1094 (3d Cir. 1975)); see also Oshiver, 38 F.3d at 1384 n.1 ("While the language of FED. R. CIV. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

## III.   **Discussion**

Defendants set forth six principal arguments in their motion to dismiss. First, defendants argue that McDonald's complaint should be dismissed for insufficient service.  Second and third, respectively, defendants contend that McDonald does not adequately plead claims under the ADA or ADEA.  In connection with this argument, defendants maintain that McDonald's hostile work environment allegations are insufficient to state a claim and are time-barred in any event.  Fourth, defendants assert that McDonald's claims under the FMLA are time-barred and that the complaint fails to state a claim for retaliation.  Fifth, defendants contend that McDonald cannot obtain relief under the PHRA on the grounds that her claim is time-barred and that her allegations fail to state a claim. Finally, defendants argue that McDonald cannot maintain breach of contract claims because the complaint does not sufficiently allege the existence of any contracts or any harm to McDonald.  The court addresses each of these issues *seriatim*.

### A.    **Sufficiency of Service**

Defendants assert that the complaint should be dismissed for insufficient process and insufficient service of process.  (Doc. 21 at 7-10).  As an initial matter,

10

the court observes that defendants do not challenge the form of the summons or the process by which it was issued.  In connection with their Rule 12(b)(4) argument, defendants challenge only McDonald's failure to serve the complaint within the period prescribed by Federal Rule of Civil Procedure 4.  This challenge is properly made pursuant to Rule 12(b)(5), and the court will construe it under that provision. See White v. SKF Aerospace, Inc., 768 F. Supp. 498, 499 n.1 (E.D. Pa. 1991).

When a plaintiff fails to serve process as set forth in Rule 4, a court possesses discretion either to dismiss the complaint or to quash service and grant plaintiff additional time to serve the summons and complaint.  See Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992); see also FED. R. CIV. P. 4(m).  When there remains a reasonable prospect that service may be obtained, however, dismissal of a complaint is inappropriate.  Umbenhauer, 969 F.2d at 30.  Under that circumstance, "the district court should, at most, quash service, leaving the plaintiff[] free to effect proper service."  Id.

### 1.    *Extension of Time for Good Cause*

McDonald does not dispute that she failed to serve the summons and complaint on the defendants by February 11, 2014, 120 days after she filed the complaint.  See FED. R. CIV. P. 4(m).  Rather, she avers that she has demonstrated good cause to extend the time for service in light of her counsel's serious health issues, as well as the illnesses of counsel's assistants and inclement weather.  (Doc. 30 at 7-8).  Defendants note that McDonald's counsel filed at least two memoranda

of law in other actions during the 120-day period for service in this case.  (Doc. 41 at 3).[5]

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  FED. R. CIV. P. 4(m).  If the plaintiff demonstrates "good cause" for the failure to serve the defendant within 120 days, however, "the court must extend the time for service for an appropriate period."  Id.

"Good cause" within the meaning of Rule 4(m) is tantamount to "excusable neglect" under Federal Rule of Civil Procedure 6(b)(1)(B),[6] which requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." MCI Telecomms. Corp., 71 F.3d at 1097 (quoting Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1312 (3d Cir. 1995) (Becker, J., concurring in part and

---

[5] The dockets associated with the two actions in which McDonald's counsel filed briefs in opposition to motions to dismiss are public records.  The court takes judicial notice of these filings for the purposes of this memorandum.  See FED. R. EVID. 201(c); Cooper v. Pa. State Att'y Gen., No. 2:06CV1332, 2007 WL 2492726, at *2 (W.D. Pa. Aug. 30, 2007) (reiterating that a federal court may take judicial notice of court records and dockets).

[6] In MCI Telecommunications Corp. v. Teleconcepts, Inc, 71 F.3d 1086 (3d Cir. 1995), the rule is cited as FED. R. CIV. P. 6(b)(2).  MCI Telecomms. Corp., 71 F.3d at 1097.  The rule permitting a court to extend time for "excusable neglect" now appears under subsection (b)(1)(B).

dissenting in part)).  Inadvertence by counsel and lack of diligent efforts at service are insufficient to establish good cause.  <u>Braxton v. United States</u>, 817 F.2d 238, 241 (3d Cir. 1987).  When determining good cause, courts have considered such factors as "(1) reasonableness of plaintiff's efforts to serve[,] (2) prejudice to the defendant by lack of timely service[,] and (3) whether plaintiff moved for an enlargement of time to serve."  <u>MCI Telecomms. Corp.</u>, 71 F.3d at 1097 (citation omitted).  The "primary focus" of the good cause inquiry "is on the plaintiff's reasons for not complying with the time limit in the first place."  <u>Boley v. Kaymark</u>, 123 F.3d 756, 758 (3d Cir. 1997) (quoting <u>MCI Telecomms. Corp.</u>, 71 F.3d at 1097).

The court finds good cause to excuse untimely service in the case *sub judice*.  First, the efforts of McDonald's counsel to serve defendants were reasonable.  Under certain circumstances, the illness of counsel may justify untimely service.  <u>See</u>, <u>e.g.</u>, <u>Hollomon v. City of New York</u>, No. 04-CV-2964 (NG)(JMA), 2006 WL 2135800, at *3 (E.D.N.Y. July 31, 2006) (finding that counsel's mental illness constituted good cause to extend the time to serve); <u>LeMaster v. City of Winnemucca</u>, 113 F.R.D. 37, 37-39 (D. Nev. 1986) (finding good cause when counsel suffered from a "severe" illness beyond his control that required intermittent hospitalization).  McDonald's counsel represents that her illnesses were sufficiently severe that they required occasional hospitalization and prevented her from working.  (Doc. 30 at 7-9).  The fact that counsel filed briefs in two other actions during the 120-day period for service does not take into account that counsel's

availability to work on pending matters during this period was limited in light of her health issues.  <u>See</u> <u>LeMaster</u>, 113 F.R.D. at 39.

 With respect to the other good cause factors, the court notes that defendants have not alleged prejudice as a result of untimely service.  And while McDonald has not formally moved for an enlargement of the time to serve, she requested an extension of time in her response to the court's show cause order.  (Doc. 5 ¶ 40).  <u>See also</u> <u>Metro. Life Ins. Co. v. Kalenvitch</u>, No. 1:10-CV-02108, 2011 WL 2941297, at *2 (M.D. Pa. July 20, 2011) (finding good cause in light of plaintiff's reasonable efforts to serve defendant even though plaintiff did not move for an enlargement of time). Accordingly, the court deems timely McDonald's February 25, 2014 service upon

SEIU HCPA and, for the reasons set forth *infra*, will grant McDonald an extension of thirty days in which to perfect service on the individual defendants.[7]

### 2.   *Service on the Individual Defendants*

Defendants also contend that, even if service were timely, McDonald failed to serve Bisno, Patterson, Fargen, and Ali in the manner prescribed by Federal Rule of Civil Procedure 4.  (Doc. 21 at 9–10).[8]  Specifically, defendants note that

---

[7] Even if McDonald had not demonstrated good cause, the court would still grant her a discretionary extension of time to serve the complaint.  Factors relevant to a discretionary extension include "actual notice of the legal action; prejudice to the defendant; the statute of limitations on the underlying causes of action; the conduct of the defendant; and whether the plaintiff is represented by counsel." Chiang v. U.S. Small Bus. Admin., 331 F. App'x 113, 116 (3d Cir. 2009) (nonprecedential).  In the instant matter, statute of limitations considerations counsel in favor of extending the time to serve.  McDonald was required to bring suit on her ADA and ADEA claims within ninety days after notice from the EEOC of her right to sue.  42 U.S.C. § 2000e–5(f)(1).  Were the court to dismiss this case and require McDonald to re-file her complaint, McDonald's ADA and ADEA claims would be time-barred.  See Scally v. Daniluk, No. 96 Civ. 7548 (KMW), 1997 WL 639036, at *3 (S.D.N.Y. Oct. 15, 1997).  Moreover, McDonald mailed waivers of service to defendants on February 12, 2014, one day after the 120-day period ended, and attempted to serve defendants approximately two weeks after this period expired.  (See Doc. 30 at 4).  Cf. Witasick v. Estes, No. 11-3895-NLH, 2012 WL 3075988, at *4-5 (D.N.J. July 30, 2012) (granting a discretionary extension of time when plaintiffs served defendants nineteen days after the 120-day deadline).  Finally, as noted *supra*, defendants have not alleged prejudice from the untimely service.

[8] Defendants' motion to dismiss contains a brief reference to insufficient service of process upon SEIU HCPA under Federal Rule of Civil Procedure 4(h) and related Pennsylvania Rules of Civil Procedure, which govern service on an association.  (See Doc. 20 ¶ 15).  Defendants failed to brief this issue in their memorandum of law in support of the motion.  Accordingly, the court deems this argument waived.  See DR Music, Inc. v. Aramini Strumenti Musicali S.R.L., No. 13-7028 FSH, 2014 WL 523042, at *1 n.1 (D.N.J. Feb. 7, 2014) (citing Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994)).

McDonald's process server gave copies of the summonses and complaints for the individual defendants to Yorel Singleton ("Singleton"), a receptionist at SEIU HCPA.  (Id. at 10).  According to the defendants, Singleton was not in fact authorized to receive service of process on behalf of the individual defendants.  (Doc. 20 ¶ 11).  McDonald submitted a declaration from her process server indicating that Singleton informed the process server that Fargen, her supervisor, was unavailable but that Singleton could take the complaints.  (Doc. 31 ¶ 3).  McDonald argues that Singleton gave the process server the impression that she was authorized to receive legal papers on behalf of the individual defendants.  (Doc. 30 at 10).

Federal Rule of Civil Procedure 4(e) governs the procedures for serving an individual within the United States.  In relevant part, the Rule provides that an individual may be served by delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process."  FED. R. CIV. P. 4(e)(2)(c).  Agency by appointment generally requires "an actual appointment for the specific purpose of receiving process."  Farm Credit of Nw. Fla., ACA v. R & B Constr. of S. Ala., Inc., No. 08-0439-WS-C, 2009 WL 3245818, at *1 n.3 (S.D. Ala. Oct. 5, 2009) (quoting 4A WRIGHT & MILLER § 1097).  Courts have held that service on receptionists or secretaries at defendants' places of business generally is insufficient under Rule 4(e) unless the defendants expressly appointed those employees to receive process.  See id. (collecting cases).  A good faith reliance on the apparent authority of an individual to receive service may satisfy the

requirements of Rule 4(e)(2)(c) under certain circumstances.  <u>Laffey v. Plousis</u>, No.

05-2796(JAG), 2008 WL 305289, at *5 (D.N.J. Feb. 1, 2008), <u>aff'd</u>, 364 F. App'x 791 (3d

Cir. 2010).  However, any apparent authority must stem from the actions of the

defendant rather than from the purported agent.  <u>Id.</u>; <u>Jumpp v. Jerkins</u>, No. 08-6268

(RBK/KMW), 2010 WL 715678, at *18 (D.N.J. Mar. 1, 2010).  A plaintiff bears the

burden of establishing an agency relationship between the defendant and the

purported agent.  <u>Parikh v. Twp. of Edison</u>, No. 08-3300(JAG), 2009 WL 5206011, at

*8 (D.N.J. Dec. 29, 2009).

McDonald has not met her burden.  She does not point to any

representations by the individual defendants that would indicate the existence of an

agency relationship between them and Singleton.  Singleton's statement that she

"could take the complaints" because Fargen was unavailable (Doc. 31 ¶ 3) is not

sufficient to create apparent authority.  <u>See</u> <u>Laffey</u>, 2008 WL 305289, at *5.

Moreover, McDonald's proofs of service for the individual defendants aver that

Singleton is designated by law to accept service of process on behalf of *SEIU HCPA*

(of which the individual defendants are officers), not on behalf of the individual

defendants.  (<u>See</u> Docs. 9-12).  <u>Cf.</u> <u>Gillen v. Kohn Law Firm S.C.</u>, No.

13-CV-373-WMC, 2013 WL 6629034, at *1 (W.D. Wis. Dec. 17, 2013) (observing that

proofs of service stated only that a receptionist was authorized to accept service on

behalf of a defendant law firm, not on behalf of individual defendants who worked

at that firm, and concluding that the fact that the individual defendants worked at

the firm did not imply that the firm may accept service on their behalf).

17

McDonald's service of process on the individual defendants was therefore improper under Rule 4(e)(2)(c).[9]

The court will deny defendants' motion to dismiss the complaint for insufficient service of process but will quash service with respect to Bisno, Patterson, Fargen, and Ali. See Mitchell, 516 F. Supp. 2d at 457. The court will grant McDonald an additional thirty days from the date of this memorandum within which to serve these defendants in accordance with Rule 4. Failure to serve the summons and complaint properly may result in dismissal of the complaint against the individual defendants. See FED. R. CIV. P. 4(m).

### B.    Americans with Disabilities Act

Defendants move to dismiss McDonald's ADA claim on the grounds that McDonald is not a "qualified individual" within the meaning of the Act, that her request for an extended leave of absence was not a reasonable accommodation, that McDonald was not similarly situated to other employees at SEIU HCPA, and that McDonald was not properly "regarded as" disabled. (Doc. 21 at 13-18). McDonald asserts that she has sufficiently pleaded a cause of action under the ADA but otherwise does not respond to defendants' arguments. (See Doc. 30 at 12-13). McDonald requests leave to amend her complaint to the extent that the court finds the allegations in her complaint insufficient to state a claim. (Id. at 13).

---

[9] McDonald does not contend that she properly effected service on the individual defendants under any other provisions of Federal Rule of Civil Procedure 4(e) or in accordance with the Pennsylvania Rules of Civil Procedure.

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998).  Defendants concede, for the purposes of this motion, that McDonald has a disability[10] and do not dispute that McDonald suffered an adverse employment action.  (Doc. 21 at 13-18).  Rather, they assert that McDonald fails to allege facts sufficient to satisfy the second element of her *prima facie* case.  (Id. at 13-17).

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8). Courts apply a two-part test to determine whether a plaintiff is a "qualified individual" under the ADA.  First, the court must analyze whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc."  Gaul, 134 F.3d at 580 (quoting 29 C.F.R. § 1630 app.).[11]  Next, the court must assess "whether

---

[10] In light of this concession, the court need not address whether McDonald has properly alleged discrimination under the "regarded as" definition of "disability."  See 42 U.S.C. § 12102(1)(C).

[11] The parties do not dispute whether McDonald possesses the requisite skill for the position.

or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. (quoting 29 C.F.R. § 1630 app.). A plaintiff bears the burden of identifying the existence of a reasonable accommodation. Fogleman v. Greater Hazleton Health Alliance, 122 F. App'x 581, 585-86 (3d Cir. 2004) (nonprecedential).

McDonald alleges that defendants failed to accommodate her by denying her request for an extension of her medical leave beyond August 31, 2011. (See Doc. 1 ¶ 172(c)). A medical leave of absence may constitute a reasonable accommodation under the ADA. 29 C.F.R. § 1630 app. (noting that reasonable accommodations could include "providing additional unpaid leave for necessary treatment"). Contrary to defendants' position (Doc. 21 at 14), a plaintiff that seeks a reasonable medical leave is not necessarily required to be able to perform the essential functions of her position until the completion of her leave. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004) ("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned, explicitly or implicitly, that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future."); Gibson v. Lafayette Manor, Inc., No. 05-1082, 2007 WL 951473, at *7 (W.D. Pa. Mar. 27, 2007) (concluding that plaintiff's inability to return to work at the conclusion of her FMLA leave was "not dispositive of whether she is a 'qualified individual.'").

20

An open-ended or indefinite leave of absence, on the other hand, is not a reasonable accommodation.  <u>Fogleman</u>, 122 F. App'x at 586 (citing cases); <u>Reifer v. Colonial Intermediate Unit 20</u>, 462 F. Supp. 2d 621, 636 (M.D. Pa. 2006) ("It is utterly unreasonable and not within the mandate of the ADA to expect an employer to accommodate an employee with an indefinite leave of absence.").  In <u>Luise v. Colonial Intermediate Unit 20</u>, No. 13-CV-02626, 2014 WL 1225969 (E.D. Pa. Mar. 21, 2014), the district court considered, on a motion to dismiss, whether plaintiff's request for an additional leave absence constituted a reasonable accommodation when the plaintiff was unable to work due to debilitating back pain.  <u>Id.</u> at *8-10.  Because the plaintiff requested leave for an additional, indefinite period of time and did not indicate that she was seeking such leave to pursue treatment that would enable her to return to work in the near future, the court dismissed the plaintiff's disability discrimination claim.  <u>Id.</u> at *10.

McDonald does not allege facts sufficient to support an inference that her final request for a medical leave was for anything but an indefinite period of time.  On May 27, 2011, prior to her final request for an extension of her medical leave, McDonald indicated that she was unable to provide Bisno with an end date for her leave.  (Doc. 1 ¶ 92; Doc. 21-1 Ex. H).  On August 2, 2011, McDonald's psychiatrist similarly certified that he could not ascertain when McDonald would be able to return to work.  (Doc. 1 ¶ 108).  On August 11, 2011, in her final request for an extension of her medical leave, McDonald again sought an undefined extension.  (Doc. 1 ¶ 112; Doc. 21-1 Ex. J).  It was not until October 31, 2011 that McDonald's

physician cleared her to return to work on a part-time basis.  (Doc. 1 ¶ 122).

Moreover, the complaint does not indicate that McDonald or her physicians

informed SEIU HCPA why an additional extension of leave was necessary to

accommodate her or that the additional leave was designed to permit her to return

to work in the near future.

The court concludes that McDonald does not adequately plead that she is a

"qualified individual" within the meaning of the ADA.  The court will dismiss

McDonald's ADA claims without prejudice.  In an amended complaint, McDonald

may allege facts concerning, *inter alia*, the durations of her leaves of absence,

communications with her employer concerning the reasonableness of her requests

for leave, or any failures on the part of SEIU HCPA to engage in a good faith

"interactive process" with McDonald in an effort to determine appropriate

accommodations for her.  See Reifer, 462 F. Supp. 2d at 634.[12]

### C.     Age Discrimination in Employment Act

McDonald claims that she was discriminated against on the basis of her age

in violation of the ADEA.  Specifically, McDonald alleges that those outside her

protected class were not subjected to unequal treatment and that she was treated

---

[12] The court is not persuaded by defendants' alternative argument that the purported absence of SEIU HCPA employees similarly situated to McDonald is fatal to McDonald's ADA claim.  (See Doc. 21 at 17-18).  As the court has explained, more favorable treatment of similarly situated employees tends to support a plaintiff's *prima facie* case but is not required to state a claim under the ADA.  Shaffer v. Greater Hazleton Health Alliance, No. 3:12-CV-02450, 2013 WL 2443931, at *3 n.3 (M.D. Pa. June 5, 2013).

less favorably than similarly situated employees.  (Doc. 1 ¶¶ 176-180).  Defendants move to dismiss McDonald's ADEA claim on the grounds that McDonald cannot demonstrate that she was treated differently than similarly situated employees and that she does not allege that her age was the "but-for" reason for her discharge. (Doc. 21 at 20-21).  McDonald does not respond substantively to this aspect of the motion.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  To establish a *prima facie* case of age discrimination under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973),[13] a plaintiff must demonstrate that "(1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was

---

[13] The Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . utilized in Title VII cases is appropriate in the ADEA context."  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 n.2 (2009).  The Third Circuit has concluded, however, that McDonnell Douglas's burden-shifting framework is consistent with Gross in the context of ADEA cases and should continue to be applied.  Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009).

The court is mindful that the McDonnell Douglas framework provides an evidentiary standard rather than a pleading standard and that a plaintiff need not establish each element of a *prima facie* case to state a claim.  Fowler, 578 F.3d at 213.  The court uses these elements only as guideposts in determining whether McDonald has properly pleaded her claims in the instant action.  See Klikus v. Cornell Iron Works, Inc., No. 3:13CV468, 2014 WL 496471, at *3 (M.D. Pa. Feb. 6, 2014).

ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013). The *prima facie* case is flexible and should not be "rigidly" applied. Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999); Fitzpatrick v. Nat'l Mobile Television, 364 F. Supp. 2d 483, 490 (M.D. Pa. 2005). Courts have held, for example, that a plaintiff may satisfy the fourth prong of the *prima facie* case by establishing that she was treated less favorably than similarly situated younger employees, see Popko v. Penn State Milton S. Hershey Med. Ctr., No. 1:13-CV-01845, 2014 WL 3508077, at *7 (M.D. Pa. July 14, 2014); Norman v. Kmart Corp., No. 3:07CV2222, 2011 WL 3794886, at *6 (M.D. Pa. Aug. 26, 2011), aff'd, 485 F. App'x 591 (3d Cir. 2012), or by alleging facts sufficient to give rise to an inference of unlawful age discrimination, see Pivirotto, 191 F.3d at 357; Grabosky v. Tammac Corp., 127 F. Supp. 2d 610, 620-21 (M.D. Pa. 2000).

McDonald does not allege that she was replaced by a younger employee.[14] She avers only that she received less favorable treatment than "similarly situated younger employees." (Doc. 1 ¶¶ 177-179). Without more, McDonald's ADEA claim cannot survive dismissal. Indeed, McDonald fails to allege any specific facts in support of her age discrimination claim. She does not indicate, for example, what

---

[14] McDonald indicates, however, that her bookkeeping position may have been "outsourced" to ADP in June 2011. (Doc. 1 ¶ 133). To the extent that McDonald alleges a reduction in force, she must demonstrate that SEIU HCPA *retained* a sufficiently younger similarly situated employee to satisfy her *prima facie* case. Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 301 (3d Cir. 2004).

duties the similarly situated employees performed, how they were treated

differently in connection with leaves of absence, for what activities they could have

been disciplined, what rights they successfully invoked under SEIU HCPA's

policies, or any other circumstances that would give rise to an inference of unlawful

age discrimination.  Cf. McCall v. Butler Health Sys./Butler Mem'l Hosp., No.

13-130, 2013 WL 6253417, at *9 (W.D. Pa. Dec. 4, 2013); Hobson v. St. Luke's Hosp. &

Health Network, No. 08-CV-05652, 2009 WL 3125513, at *4 (E.D. Pa. Sept. 28, 2009).

Unlike Popko, in which the plaintiff alleged specific facts concerning the actions of

a younger employee who was not disciplined for engaging in similar conduct,

McDonald points to no such circumstances in support of her ADEA claim.  See

Popko, 2014 WL 3508077, at *7.  Her allegations that similarly situated younger

employees were treated less favorably therefore constitute "legal conclusions that

do not have a presumption of truth and can be disregarded."  Klikus, 2014 WL

496471, at *5 (citing Fowler, 578 F.3d at 210-11).  For the foregoing reasons, the

court will dismiss McDonald's ADEA claim without prejudice and will grant her

leave to file an amended complaint alleging specific facts and circumstances in

support of her claim for age discrimination.

Defendants further argue that McDonald's ADEA claim should be dismissed

because McDonald cannot demonstrate that her age was the "but-for" reason for

her termination when she simultaneously states a claim for discrimination on the

basis of disability.  (Doc. 21 at 21).  The court disagrees.  In Gross, the Supreme

Court held that a plaintiff who brings a disparate treatment claim under the ADEA

must prove that age was the "but-for" cause of the adverse employment action. Gross, 557 U.S. at 180. As the Third Circuit explained post-Gross, however, a plaintiff need not establish that age discrimination is the "sole cause" for an adverse employment action to state a claim under the ADEA. Robinson v. City of Philadelphia, 491 F. App'x 295, 299 (3d Cir. 2012) (nonprecedential). McDonald must demonstrate that her age was a "determinative factor" in the adverse employment action. See Eldrup-Smith v. Sears Roebuck & Co., No. 1:12-CV-1862, 2014 WL 1344598, at *6 (M.D. Pa. Apr. 4, 2014). The court is unable to conclude at this juncture that it was not.

Finally, defendants move to strike or dismiss McDonald's request for punitive damages under the ADEA. (Doc. 21 at 22). The Third Circuit has concluded that damages for "pain and suffering" are improper in age discrimination cases but has not explicitly held that punitive damages are unavailable under the ADEA. See Rogers v. Exxon Research & Eng'g Co., 550 F.2d 834, 841 (3d Cir. 1977), overruled on other grounds by Smith v. Joseph Schlitz Brewing Co., 584 F.2d 1231 (3d Cir. 1978). Other courts of appeals and district courts within this circuit have reasoned that punitive damages are prohibited under the ADEA. See Bellas v. WVHCS Retention Co., No. 3:11-CV-673, 2012 WL 3961227, at *6 (M.D. Pa. Sept. 10, 2012) (collecting cases); Jordan v. Wilkes-Barre Gen. Hosp., No. 3:07CV390, 2008 WL 3981460, at *6 (M.D. Pa. Aug. 22, 2008) (same). The court is persuaded by this weight of authority and will dismiss McDonald's request for punitive damages

under the ADEA.  <u>See</u> 5C WRIGHT & MILLER § 1380 (explaining that dismissal of the

improper claim for damages is procedurally proper under these circumstances).[15]

### D. Hostile Work Environment

The complaint contains several references to a hostile work environment at

SEIU HCPA.  (Doc. 1 ¶¶ 44, 153, 176).  It is not apparent whether McDonald intends

to allege hostile work environment claims under the ADEA alone or under both the

ADA and ADEA, and her opposition brief offers no clarification.  Liberally

construing the complaint in McDonald's favor, the court will presume that

McDonald wishes to state hostile work environment claims under both the ADA

and ADEA.  Defendants argue that any hostile work environment claims are

untimely and insufficiently pleaded.  (Doc. 21 at 19-20).

### 1. *Timeliness of Claims*

To the extent that hostile work environment claims exist under the ADA and

ADEA,[16] those claims are time-barred here.  A plaintiff must file a charge of

discrimination no later than 300 days "after the alleged unlawful employment

---

[15] The court notes that McDonald does not request liquidated damages in connection with her age discrimination claim, which remain available under the ADEA for willful violations.  <u>Potence v. Hazleton Area Sch. Dist.</u>, 357 F.3d 366, 373 (3d Cir. 2004).

[16] The Third Circuit has assumed, without deciding, that causes of action for a hostile work environment are cognizable under the ADA and ADEA.  <u>See</u> <u>Slater v. Susquehanna Cnty.</u>, 465 F. App'x 132, 138 (3d Cir. 2012) (nonprecedential) (ADEA); <u>Walton v. Mental Health Ass'n of Se. Pa.</u>, 168 F.3d 661, 666-67 & n.2 (3d Cir. 1999) (ADA).  The court therefore assumes for the purposes of this memorandum that hostile work environment claims are available under both Acts.

practice occurred" when she concurrently files the charge with the EEOC and a state agency. 42 U.S.C. § 2000e–5(e)(1). McDonald filed her charge with the EEOC and PHRC on June 27, 2012, exactly 300 days after her termination on September 1, 2011. (Doc. 1 ¶ 25). The only allegedly unlawful employment action that McDonald points to during this 300-day period is her discharge from SEIU HCPA.

McDonald argues that her hostile work environment claims are timely under the "continuing violations doctrine." (Doc. 30 at 14-15). Under this doctrine, discriminatory practices that are not individually actionable may be aggregated to form a single hostile work environment claim. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013). To the extent that a plaintiff can show that the acts underlying the hostile work environment claim are part of the same unlawful employment practice and at least one such act falls within the statutory period, her hostile work environment claim will not be time-barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002). As the Third Circuit explained, the Supreme Court drew a clear distinction between discrete acts, which are individually actionable, and acts that are not themselves actionable but may comprise a hostile work environment claim in the aggregate. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing Morgan, 536 U.S. at 113). The Court concluded that hostile work environment claims are "different in kind" from discrete acts because "[t]heir very nature involves repeated conduct." Morgan, 536 U.S. at 115. Discrete acts must be raised within the statutory period or else lost, while other acts may occur outside the limitations period "so long as they are linked in a pattern of

28

actions which continues into the applicable limitations period." O'Connor, 440 F.3d at 127.  Discrete acts include termination, a failure to promote, a denial of transfer, and a refusal to hire. Morgan, 536 U.S. at 114.

The majority of Pennsylvania district courts that have addressed the issue have found that a discrete act such as termination cannot be made part of a hostile work environment claim otherwise predicated on practices that occurred outside the limitations period. See, e.g., Santee v. Lehigh Valley Health Network, Inc., No. 13-3774, 2013 WL 6697865, at *6 (E.D. Pa. Dec. 19, 2013) ("Plaintiff's termination . . . is a discrete act and is not a component of a hostile work environment claim."); Riley v. St Mary Med. Ctr., No. 13-CV-7205, 2014 WL 1632160, at *4 (E.D. Pa. Apr. 23, 2014) ("Plaintiff's . . . termination undoubtedly falls into the category of a 'discrete act' which, under the Third Circuit's reading of Morgan, may not be used in aggregate with other acts to constitute a hostile work environment claim." (footnote omitted)); see also Zankel v. Temple Univ., 245 F. App'x 196, 199 (3d Cir. 2007) (nonprecedential) ("[Plaintiff's] termination . . . is a discrete act, not a continuation of any earlier failures to accommodate that may have occurred [outside the limitations period].").  In Popko, the plaintiff similarly filed his charge with the EEOC exactly 300 days after his termination.  The court held that plaintiff's hostile work environment claim was time-barred because the only allegedly unlawful act that occurred within the limitations period was plaintiff's termination, which could not be aggregated with other practices under the continuing violations doctrine.  Popko, 2014 WL 3508077, at *3.

The court is persuaded by this authority.  Because McDonald does not allege any unlawful employment practices within the limitations period other than the discrete act of her termination, the court will dismiss McDonald's hostile work environment claims without prejudice.  McDonald is granted leave to file an amended complaint alleging any acts or practices between September 1, 2011 and June 27, 2012 that may give rise to an inference of a hostile work environment or support an application of the continuing violations doctrine.

### 2.   *Sufficiency of Claims*

The court further concludes that, even if her hostile work environment claims were not time-barred or otherwise facially deficient,[17] McDonald fails to allege sufficient facts to state hostile work environment claims.  To prevail on a hostile work environment claim, as a general matter, a plaintiff must demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  Culler v. Sec'y of U.S. Veterans Affairs, 507 F. App'x 246, 249 (3d Cir. 2012) (nonprecedential) (quoting

---

[17] McDonald's hostile work environment claims also fail to the extent that she has not adequately alleged that she was a "qualified individual" within the meaning of the ADA or facts sufficient to give rise to an inference of unlawful discrimination under the ADEA, as the court explained *supra*.

Morgan, 536 U.S. at 116).[18]  A court must examine the totality of the circumstances in assessing the hostility of the work environment, including the frequency of the discriminatory conduct, whether the conduct is physically threatening, whether the conduct unreasonably interferes with an employee's performance, and any psychological harm to the employee.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  A hostile work environment is only actionable, however, if the harassment or discrimination is "because of" a plaintiff's protected status.  Culler, 507 F. App'x

_____

[18] Courts in this circuit have adopted slightly different requirements for hostile work environment claims under the ADA and ADEA.  To state a hostile work environment claim under the ADA, a plaintiff must demonstrate that:

> (1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [her employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

Walton, 168 F.3d at 667.

A hostile work environment claim under the ADEA, on the other hand, requires:

> (1) intentional discrimination because of age which is (2) pervasive and regular, (3) has detrimental effects that (4) would be suffered by a reasonable person of the same age in the same position, and (5) [the existence of] respondeat superior liability . . . .

Fries v. Metro. Mgmt. Corp., 293 F. Supp. 2d 498, 504 (E.D. Pa. 2003), aff'd sub nom. Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506 (3d Cir. 2004).

at 249 (quoting Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007)); see also Barclay v. Amtrak, 240 F. App'x 505, 508 (3d Cir. 2007) (nonprecedential) ("[T]he ADA does not protect an employee from every kind of harassment, only harassment that is based upon the employee's disability.").

McDonald alleges, *inter alia*, that SEIU HCPA instituted a policy of mandatory attendance at union-related demonstrations and news conferences and that Fargen denied McDonald's request for an exemption from these events.  (Doc. 1 ¶¶ 65-67).  McDonald avers that she was "forced against her will" to attend these events for fear of losing her job and became "physically ill" at them.  (Id. ¶¶ 68-69).  On February 9, 2011—after attending these events—McDonald fell "severely ill."  (See id. ¶ 70).  McDonald does not explain when SEIU HCPA implemented this mandatory attendance policy, how many demonstrations or conferences she was compelled to attend, or in what manner she became ill after attending these events.  Viewing these facts in the light most favorable to McDonald, however, the court finds that McDonald plausibly alleges that the conditions at her workplace were sufficiently severe or pervasive so as to create a hostile work environment.  See Culler, 507 F. App'x at 249.

McDonald must also allege facts sufficient to support an inference that she was harassed or discriminated against *because of* a protected status, and in this respect the complaint fails to state hostile work environment claims.  McDonald offers little more than conclusory assertions that defendants discriminated against her on the basis of her disability and age.  (See Doc. 1 ¶¶ 168, 180).  Cf. Thomas v.

32

Pocono Mountain Sch. Dist., No. 3:10-CV-1946, 2011 WL 2471532, at *8 (M.D. Pa. June 21, 2011). She does not, for example, point to comments by supervisors that would tend to show that McDonald was required to attend demonstrations on account of, or with a causal connection to, a protected status. The fact that an employer's conduct may have been harmful "does not indicate that it was based on [her] disability." Walton, 168 F.3d at 667. In Walton, the plaintiff's supervisor told the plaintiff—who, like McDonald, suffered from depression and agoraphobia—that she would be fired if she did not attend a consumer training program ceremony and that she was "manic-depressive," among other things. Id. at 664, 667 n.4. The Third Circuit concluded that while the plaintiff's relationship with her employer was poor, the plaintiff had not alleged facts that would permit a jury to find that she was harassed because of her disability. Id. at 667.[19] The court will dismiss McDonald's hostile work environment claims without prejudice on this additional basis. McDonald may allege facts concerning any connection between the allegedly hostile work environment and her disability or age in an amended complaint.

## E.   Family and Medical Leave Act

Defendants move to dismiss McDonald's retaliation claim under the FMLA. They argue that the claim is time-barred, that McDonald's allegations of retaliation are facially deficient, and that the claim fails as a matter of law with respect to

---

[19] The court also affirmed the district court's conclusion that the alleged harassment was not sufficiently severe or pervasive to constitute a hostile work environment. Walton, 168 F.3d at 667.

certain individual defendants.  (Doc. 21 at 22-26).  The court agrees with defendants

in part.

### 1.    *Timeliness of Claim*

A plaintiff must generally commence a cause of action under the FMLA

within two years "after the date of the last event constituting the alleged violation

for which the action is brought."  29 U.S.C. § 2617(c)(1).  The only statutory

exception to this rule is when the alleged violation was "willful."  29 U.S.C.

§ 2617(c)(2).  In a willful violation case, plaintiff must commence an action within

three years of the violation.  Id.  In the instant matter, McDonald filed her

complaint on October 14, 2013, more than two years but less than three years after

her termination, the last event for which McDonald seeks relief.  McDonald's FMLA

claim is therefore untimely unless she can avail herself of the three-year limitations

period for "willful" violations.

Neither the Supreme Court nor the Third Circuit have defined "willful"

within the meaning of the FMLA's three-year limitations period.  See Seifert v.

Commonwealth of Pa. Human Relations Comm'n, 515 F. Supp. 2d 601, 611 (W.D.

Pa. 2007), aff'd on other grounds, 301 F. App'x 194 (3d Cir. 2008).  Within the context

of the Fair Labor Standards Act, however, the Court has explained that an

employer's actions are "willful" when "the employer either knew or showed

reckless disregard for the matter of whether its conduct was prohibited by the

statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Mere

negligence is not enough.  Id.  Other courts of appeals and district courts within this

circuit have applied this standard to the FMLA's limitations period.  See, e.g.,

Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003); Rigel v. Wilks, No.

1:03-CV-971, 2006 WL 3831384, at *13 (M.D. Pa. Dec. 28, 2006).

Contrary to McDonald's position (Doc. 30 at 14), the complaint does not

adequately allege that defendants' violations of the FMLA were willful.  The only

references to willful behavior in the complaint concern McDonald's claims for

unlawful discharge and failure to accommodate under the ADA and for breach of

contract, both of which are distinct from her FMLA claim.  (See Doc. 1 ¶¶ 172, 202).

McDonald also fails to plead that defendants knew or recklessly disregarded that

their conduct was violative of the FMLA.  See McLaughlin, 486 U.S. at 133.  Without

such allegations, or facts sufficient to support a reasonable inference that

defendants' conduct was willful with respect to any FMLA violation, McDonald's

FMLA claim must be dismissed without prejudice as untimely.  The court will

permit McDonald to amend her complaint to allege that defendants willfully

violated the FMLA.

### 2.   *Sufficiency of Claim in General*

The FMLA was designed in part "to balance the demands of the workplace

with the needs of families."  29 U.S.C. § 2601(b)(1).  As the court has explained, the

FMLA contains both prescriptive and proscriptive rights.  Rigel, 2006 WL 3831384,

at *10.  Prescriptive rights create substantive rights for employees, such as the

ability to take up to twelve weeks of unpaid leave, and prohibit "interference" with

those rights.  Id. (citing 29 U.S.C. § 2615(a)(1)).  Proscriptive rights, by contrast,

make unlawful discrimination or retaliation against an employee for exercising the FMLA's prescriptive rights.  Id. (citing 29 U.S.C. § 2615(a)(2)).  The Third Circuit has observed that although retaliation claims alleging that an employee was unlawfully terminated for taking FMLA leave do not fall within the "literal scope" of 29 U.S.C. § 2615(a)(2), such claims are nevertheless cognizable under 29 C.F.R. § 825.220(c).  Conoshenti, 364 F.3d at 146 n.9; see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301 n.10 (3d Cir. 2012) ("[W]e have predicated liability for retaliation based on an employee's exercise of FMLA rights on the regulation itself.").  The relevant regulation provides that the FMLA "prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  § 825.220(c).

The distinction between prescriptive and proscriptive rights is significant in the instant case.  Count III of the complaint is labeled "FMLA—Retaliation."  (Doc. 1 at 39).  Within this count, McDonald broadly alleges that defendants retaliated against her in violation of the FMLA by "treating her different, discriminating against her, failing to accommodate her, targeting her, and ultimately terminating her for alleged job abandonment."  (Id. ¶ 184).  McDonald does not succinctly allege in this count that the retaliation was in response to her taking FMLA leave, but elsewhere in the complaint refers to "retaliation for taking FMLA and medical leave."  (See id. ¶ 190).  Construing the complaint in her favor, the court finds that

McDonald intends to bring a cause of action under the FMLA for retaliation predicated on her exercise of FMLA rights.[20]

To state a retaliation claim, a plaintiff must demonstrate that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." Lichtenstein, 691 F.3d at 301-02. Defendants argue that McDonald did not suffer an adverse employment action because she was unable to return to work following her FMLA leave and that McDonald does not sufficiently allege that any adverse action was causally related to her leave. (Doc. 21 at 23-26).

Defendants cite a nonprecedential Third Circuit opinion in support of the proposition that if an employee is unable to return to work after the expiration of her FMLA leave, her employer may lawfully terminate her. See Katekovich v. Team Rent A Car of Pittsburgh, Inc., 36 F. App'x 688, 690 (3d Cir. 2002) (nonprecedential). In Katekovich, the court held that an employer did not violate the FMLA when it terminated an employee three weeks after she was hospitalized for sleep-related disorders. Id. at 689-91. The employee had not proved that she would have been able to return to work after the completion of her twelve-week FMLA leave. Id. at 690-91.

Katekovich does not carry the weight that defendants ascribe to it. First, the opinion does not indicate whether the court considered an interference or

---

[20] McDonald does not appear to bring an interference claim under the FMLA.

retaliation claim under the FMLA.  Interference claims concern an employee's

prescriptive rights under the FMLA, and an employee may not be able to state an

interference claim when she is no longer entitled to FMLA benefits.  See Thurston

v. Cherry Hill Triplex, 941 F. Supp. 2d 520, 525-30 (D.N.J. 2008).  Retaliation claims,

on the other hand, concern an employer's reasons for terminating an employee and

are not conditioned upon the existence of remaining FMLA entitlements.  See id. at

525-32 (explaining the distinction between interference claims and retaliation

claims and concluding that "an employee is not precluded as a matter of law from

bringing a retaliation claim simply because he or she exceeded the twelve-week

FMLA entitlement."); see also Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160

(1st Cir. 1998) (observing that the motivations of the employer are relevant when

retaliation claims are at issue).  To the extent that Katekovich concerns only

prescriptive rights, it does not support the proposition that an employer may

retaliate against an employee for taking FMLA leave, even if she is unable to return

to work following her leave.  Second, defendants' interpretation of this

authority—carried to its logical conclusion—would imply that an employer violates

the FLMA when, in retaliation for exercising her FMLA rights, it terminates an

employee who returns to work the day after her twelve-week leave, but does *not*

violate the FMLA when, in retaliation for exercising those same rights, it terminates

an employee who is unable to return until the following day.  The court cannot

countenance this conclusion.  Finally, <u>Katekovich</u> is not binding on the court.[21]

The Third Circuit recently cast serious doubt on the validity of defendants' argument.  In <u>Budhun v. Reading Hospital & Medical Center</u>, No. 11-4625, __ F.3d __, 2014 WL 4211116 (3d Cir. Aug. 27, 2014) (precedential), Reading Hospital approved FMLA leave for Budhun through September 2010 and non-FMLA leave through November 2010.  <u>Id.</u> at *3.  When Budhun was unable to return to work after her FMLA leave expired, Reading offered Budhun's position to another employee.  <u>Id.</u>  Reading argued that Budhun did not experience an adverse employment action because it considered her to have resigned voluntarily in November 2010 when she failed to return to work after her non-FMLA leave.  <u>Id.</u> at *10.  The district court granted summary judgment to Reading on Budhun's FMLA

---

[21] The court acknowledges that some district courts in this circuit have concluded that a plaintiff does not suffer an adverse employment action under the FMLA when she is unable to return to work after her FMLA leave.  <u>See</u>, <u>e.g.</u>, <u>Freeman v. Phila. Hous. Auth.</u>, No. 12-1422, 2013 WL 3761274, at *22 (E.D. Pa. July 18, 2013); <u>Gibson</u>, 2007 WL 951473, at *19; <u>Dogmanits v. Capital Blue Cross</u>, 413 F. Supp. 2d 452, 463 (E.D. Pa. 2005).  Others have reasoned that a plaintiff's ability to state a retaliation claim does not depend on her ability to return to work, many noting that the contrary decisions conflate prescriptive and proscriptive rights under the FMLA.  <u>See</u>, <u>e.g.</u>, <u>Donald v. Se. Pa. Transp. Auth. (SEPTA)</u>, No. 13-0440, 2014 WL 3746520, at *5-6 (E.D. Pa. July 29, 2014); <u>Fleck v. WILMAC Corp.</u>, No. 10-05562, 2011 WL 1899198, at *9-10 (E.D. Pa. May 19, 2011); <u>Castellani v. Bucks Cnty. Municipality</u>, No. 07-1198, 2008 WL 3984064, at *6 (E.D. Pa. Aug. 27, 2008), <u>aff'd</u>, 351 F. App'x 774 (3d Cir. 2009); <u>Chapman v. UPMC Health Sys.</u>, 516 F. Supp. 2d 506, 524 & n.4 (W.D. Pa. 2007); <u>Keim v. Nat'l R.R. Passenger Corp.</u>, No. 05-CV-4338, 2007 WL 2155656, at *6-7 & n.6 (E.D. Pa. July 26, 2007).  For the reasons identified in this memorandum, this court finds the latter authority persuasive.

retaliation claim in part because Budhun was unable to return to work following her FMLA leave.  Id. at *4.

The Third Circuit vacated this aspect of the decision.  It held that Budhun could have suffered an adverse employment action when Reading replaced Budhun after her FMLA leave expired, notwithstanding the fact that Budhun was unable to return to work at that time.  Id. at *10.  Indeed, Reading required Budhun to return her keys and remove her personal items, prohibited her from entering the workplace, and did not offer her another position at the hospital.  Id.  Implying that formal termination after the expiration of FMLA leave would constitute an adverse employment action, the court concluded that these lesser actions similarly altered Budhun's "privileges of employment."  See id.

SEIU HCPA terminated McDonald outright after the conclusion of her FMLA leave.[22]  Applying the *ratio decidendi* of Budhun, McDonald sufficiently alleges an adverse employment action with respect to her retaliation claim under the FMLA.  The court will deny defendants' motion to dismiss to the extent that defendants argue that McDonald's inability to return to work after her FMLA leave, standing alone, renders her termination nonadverse for the purposes of her retaliation claim.

---

[22] McDonald also alleges that, during her FMLA leave, her personal items were placed in a cupboard, her mailbox was removed, and her telephone message was changed.  (Doc. 1 ¶¶ 127-132).  The court need not consider whether these actions constitute adverse employment actions at this stage in the proceedings because McDonald's termination is sufficient.  See Budhun, 2014 WL 4211116, at *10.

Defendants further contend that McDonald does not sufficiently allege that her termination was related to her exercise of FMLA rights.  A plaintiff may establish a causal link between her FMLA leave and an adverse employment action by showing "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Budhun, 2014 WL 4211116, at *11 (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).  When the temporal proximity is not unusually suggestive, a plaintiff may still establish causation if "the proffered evidence, looked at as a whole, may suffice to raise the inference." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).

McDonald avers that she was terminated several months after taking a leave of absence under the FMLA and alleges specific facts regarding defendants' negative treatment of her position at SEIU HCPA during her FMLA leave.  These allegations are sufficient; whether the precise timing of defendants' employment actions establishes causation need not be resolved at this stage in the proceedings. See Hines v. Twp. of Harrison, Pa., No. 07-0594, 2007 WL 2907896, at *2 (W.D. Pa. Sept. 30, 2007).  Accordingly, the court will deny defendants' motion to dismiss McDonald's retaliation claim to the extent that they contend McDonald cannot satisfy the FMLA's causation requirement.

### 3.      *Sufficiency of Claim as to Patterson, Fargen, and Ali*

Finally, defendants assert that McDonald's retaliation claim should be dismissed with respect to Patterson, Fargen, and Ali because McDonald does not allege that they were responsible for any retaliation. (Doc. 21 at 26). The court agrees.[23] An individual may be held liable under the FMLA "when he or she exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 667 F.3d 408, 417 (3d Cir. 2012) (citation omitted) (internal quotation marks omitted). Factors that determine the existence of supervisory authority over an employee include whether the individual had the power to hire or terminate the employee and whether the individual controlled the employee's work schedules or conditions of employment. Id. at 418.

McDonald alleges that Patterson, Fargen, and Ali each possessed supervisory authority over her and her conditions of employment. (Doc. 1 ¶¶ 15-17). McDonald also points to specific instances in which these defendants exercised their supervisory role over McDonald or her work schedule. (See id. ¶¶ 65 (Patterson), 66-67 (Fargen), 134-135 (Ali)). McDonald does not, however, allege facts sufficient to support an inference that Patterson, Fargen, or Ali were *responsible* for retaliating against her in connection with her FMLA leave. See Haybarger, 667 F.3d at 417. With the exception of certain administrative activities by Fargen and two comments

---

[23] The court notes that McDonald does not respond to this portion of the motion.

by Ali concerning McDonald's position at SEIU HCPA,[24] McDonald does not plead any specific actions on the part of Patterson, Fargen, or Ali between the commencement of her FMLA leave and her termination.  The court cannot conclude that amendment would be futile and hence will dismiss McDonald's retaliation claim against Patterson, Fargen, and Ali without prejudice.

> ### F.      Pennsylvania Human Relations Act

The PHRA makes it unlawful, *inter alia*, for employers to refuse to hire, terminate, or discriminate against employees on the basis of disability or age.  43 PA. CONS. STAT. § 955(a).  Disability or age discrimination claims under the PHRA are construed as coextensive with the respective scopes of the ADA and ADEA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  To bring a claim under the PHRA, a plaintiff must file a complaint with the PHRC within 180 days of the allegedly discriminatory act.  43 PA. CONS. STAT. § 959(h).

Defendants contend that McDonald's PHRA claim is time-barred because she did not file her complaint with the PHRC until 300 days after her termination from SEIU HCPA.  (Doc. 21 at 27).  McDonald does not contest this fact or point to any reasons why the court should excuse the untimely nature of this claim.

---

[24] McDonald does not allege that Ali was in any way responsible for her termination or other adverse employment actions.

Accordingly, the court will dismiss McDonald's PHRA claim with prejudice.  Leave to amend will be denied as futile.  See Grayson, 293 F.3d at 108.[25]

### G.    Breach of Contract

McDonald alleges that defendants breached three separate policies: (1) SEIU HCPA's medical leave policy, (2) SEIU HCPA's anti-discrimination and anti-harassment policies, and (3) SEIU HCPA's union membership policy.  (Doc. 1 ¶¶ 202-204).  Defendants move to dismiss McDonald's breach of contract claims on the grounds that these policies are not contracts and that, with respect to the alleged breach of the union membership policy, McDonald has not pleaded damages.  (Doc. 21 at 28-29).  McDonald does not respond to these arguments.

To establish a claim for breach of contract under Pennsylvania law, a plaintiff must plead "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages."  CoreStates Bank, Nat'l Ass'n v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).  There is a "very strong presumption" in Pennsylvania that employment relationships are at-will.  Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1258 (M.D. Pa. 1994) (citing Scott v. Extracorporeal, Inc., 545 A.2d 334, 336 (Pa. Super. Ct. 1988)).  An employee manual or handbook does not create an enforceable contract between an

---

[25] In the interest of completeness, the court also dismisses McDonald's PHRA claim on the grounds that she fails to state a claim under the ADA or ADEA.  See Amiot v. Kemper Ins. Co., 122 F. App'x 577, 580 (3d Cir. 2004) (nonprecedential) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)) (reasoning that because the plaintiff failed to state a claim under the ADA or ADEA, the plaintiff's PHRA claim similarly fails).

employer and employee unless "a reasonable person in the employee's position would interpret its provisions as illustrating the employer's intent to overcome the at-will rule and be legally bound by the representations contained in the book." Engle v. Milton Hershey Sch., No. 1:06 CV 010093, 2007 WL 1365916, at *8 (M.D. Pa. Jan. 19, 2007) (quoting Hartman v. Sterling, Inc., No. 01-CV-2630, 2003 WL 22358548, at *13 (E.D. Pa. Sept. 10, 2003)).

With respect to SEIU HCPA's medical leave policy, McDonald does not plead that the policy constituted an express or implied contract, that SEIU HCPA intended to be legally bound by this policy, or that McDonald was anything other than an at-will employee.  Hence, this claim cannot survive dismissal.

McDonald's claim for breach of the anti-discrimination and anti-harassment policies fares no better.  As with her first breach of contract theory, McDonald does not allege that this policy represented a contract with SEIU HCPA.  An employer's policy statement that it will comply with its legal obligations, without more, does not create a legally binding obligation.  Monaco, 359 F.3d at 308; see also Tourtellotte v. Eli Lilly & Co., No. 09-0774, 2013 WL 1628607, at *4 (E.D. Pa. Apr. 16, 2013) (holding that "generalized anti-discrimination language" in an employer's policy manual did not create any new obligations).[26]

---

[26] A breach of contract claim based on an employer's anti-discrimination policy may be cognizable when that policy prohibits discrimination on the basis of a status not protected by existing law.  Monaco, 359 F.3d at 309 n.16.  In the instant matter, McDonald alleges discrimination on the basis of her disability and age, which the ADA, ADEA, and PHRA expressly proscribe.

McDonald's claim that Patterson breached SEIU HCPA's union membership policy also fails as a matter of law.  The only factual allegation remotely pertinent to this claim is that Patterson sent McDonald an email after McDonald's bereavement leave in January 2011 in which Patterson indicated that she was displeased that McDonald had not joined the union.  (Doc. 1 ¶¶ 45-46).  McDonald does not allege that the union membership policy constituted a contract.  Even if she had, this meager allegation does not plausibly support an inference that Patterson breached any such contract or that McDonald suffered any damages as a result of that breach.

The court will also dismiss all breach of contract claims against the individual defendants.  Under Pennsylvania law, an employee who is not a party to the company's employment contract cannot be liable for the company's breach of that contract unless the employee assumed a personal duty within that contract. White v. Ciber, Inc., No. 1:07-CV-1483, 2007 WL 3491272, at *6 (M.D. Pa. Nov. 14, 2007) (citations omitted); see also Hrosik v. Latrobe Steel Co., No. 94-1361, 1995 WL 456212, at *6 (W.D. Pa. Apr. 25, 1995) ("Persons who have not entered into an employment contract cannot possibly be liable for a breach thereof.").  In the instant matter, McDonald does not allege that any of the individual defendants were parties to the policies at issue or otherwise assumed any personal obligations under those policies.

The court notes that McDonald does not attach the policies at issue to her complaint and thus is unable to determine conclusively whether amendment would

46

be futile.  In this circumstance, the court will dismiss McDonald's breach of

contract claims without prejudice and permit McDonald to amend her complaint.

**IV.** **Conclusion**

For all of the foregoing reasons and subject to the accompanying order, the

court will grant in part and deny in part defendants' motions to dismiss (Doc. 20),

extend the time to effect service upon the individual defendants, and grant

McDonald leave to file an amended complaint.  An appropriate order follows.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        September 18, 2014